UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AARON R. CATHCART, et al** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-3228-SS** |
| **CIRCLE T, LTD., et al** | |

### ORDER

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Rec. doc. 23)

**GRANTED IN PART AND DENIED IN PART**

Before the undersigned is the motion of the defendants, Circle T, Ltd. ("Circle T") and James G. Davis ("Davis"), for summary judgment on the claims of the plaintiffs, Aaron R. Cathcart and Betty Leboeuf Cathcart, for breach of contract and fraudulent misrepresentation. For the reasons described below: (1) the motion is granted in part and denied in part as to the claim of breach of contract; (2) the motion is granted as to the claim of fraudulent misrepresentation; and (3) the action will be stayed and administratively closed until the resolution of a related state court proceeding.

### PROCEDURAL BACKGROUND

On June 7, 2007, the plaintiffs filed a complaint against Circle T and Davis. Rec. doc. 1. The plaintiffs allege that jurisdiction is present to pursuant to 28 U.S.C. § 1332.[1] The parties consented to proceed before a magistrate judge. Rec. docs. 13-17. The trial is set for October 1, 2008 as a bench trial. Rec. doc. 35. On August 15, 2008, the defendants filed a motion for summary

---

[1] The plaintiffs are residents of Louisiana, and the defendants are residents of Mississippi. The defendants dispute the contention that plaintiffs' claims meet the amount required for diversity jurisdiction. Rec. doc. 34 at 2. This issue has not been briefed. The court's review of the exhibits presented by the parties on the motion for summary judgment indicates that the plaintiffs' claims meet the jurisdictional amount.

judgment.

## UNDISPUTED FACTS

1. Prior to 1999, there was a sand and gravel operation on rural land in Washington Parish between the Bouge Chitto River and Louisiana Highway 25. A gravel road from the highway provided access to this enterprise. A locked gate was maintained across the gravel road at the highway to prevent trespassers from having easy access to the property.

2. During the operation of the enterprise, pits were dug and flooded. A lake was formed on the property, which covers approximately 100 acres.

3. On May 28, 1999, Green Land Limited Partnership sold land to Circle T by which Circle T acquired 411.93 acres, including part of the lake. The tract was bounded by: the Bouge Chitto River on the west; a line which lay roughly parallel to and just north of the gravel road; Highway 25 on the east; and a very irregular line on the south.

4. At some point Rev. Jerry Wayne Cox and his wife, Brenda Cox, acquired 309.98 acres (the "Cox property") immediately to the south of Circle T's 411.93 acres. The Cox property included most of the land beneath the 100-acre lake.

5. At some point the 100-acre lake was named Lake MaKinley; and at least some of the Circle T property was referred to as MaKinley Cove.

6. On July 18, 2000, Circle T sold 20.648 acres of its 411.93 acres to James and Cathy Magee (the "Magees" or the "Magee property").

7. The Magee act of sale established a nonexclusive servitude and right of ingress and egress for passage in favor of the Magee property and subsequent parcels conveyed (sometimes referred to as the "first servitude of passage" or the "first servitude"). This servitude of passage is served by

the gravel road, which parallels most of the northern boundary of the 411.93 acres.

8. On August 11, 2000, Circle T and the Magees established "Restrictive Covenants for MaKinley Cove and adjacent parcels. . ." Rec. doc. 23 (Exhibit 2). The restrictions included the following:

a. All lots were designated as recreational, residential and noncommercial.

b. No lot shall be divided into smaller parcels of less than five acres.

c. Parcels adjacent to the lake are designated for private use (owners and family). No guest is allowed unless accompanied by an owner, whether on the lake, hunting or on the premises. Any individual not accompanied is a trespasser subject to penalties.

d. There will be no clear cutting of timber on any parcel.

e. Any mobile home placed on the property shall be tied down and skirted.

9. On August 22, 2000, the Cathcarts signed an agreement to purchase 5.3 acres. Joey Knight was identified as the listing agent and the seller was not identified. The property was described as Headright 40, Township 1, Range 10 in the town of Clifton, Parish of Washington.

10. On October 10, 2000, a second servitude of passage was created, which extended from the gravel road westward to a boat launch on the Bouge Chitto River (the "second servitude").

11. On October 10, 2000 (the same day as the creation of the second servitude), Circle T sold 5.32 acres to the Cathcarts. The act of sale provided that it was subject to: (a) the first servitude of passage; (b) the second servitude of passage; and (c) the restrictive covenants, all of which were recorded in the Washington Parish public records. The Cathcarts' property is the shape of a right triangle. One side was on a portion of the north boundary of the 411.93 acre tract. A second side, which formed the right angle, extended in a southerly direction on the bank of one of the fingers of Lake MaKinley and into the lake. The third side ran in a southwesterly direction.

12. Clayton Knight was the closing attorney when the Cathcarts purchased their property and they acquired a title policy from him.

13. The gate across the gravel road at Highway 25 remained locked. The property owners in MaKinley Cove had keys to the gate.

14. In August 2001, Circle T removed the lock from the gate at Highway 25, and it has remained unlocked since that time.

15. On December 21, 2001, Circle T sold 183.07 acres of the 411.93 acres to Margie Ellis. The sale was subject to the first and second servitudes. The act of sale specified that:

> The restrictive covenants of record at COB 510 Page 429 of the official records of Washington Parish, Louisiana apply only to property and property owners on MaKinley Cove and not to the above described property.

Rec. doc. 28 (Exhibit D).

16. Circle T sold lots fronting the Bouge Chitto River and the acts of sale stated that the restrictive covenants did not apply to them.

17. On August 7, 2003, the Cathcarts filed a petition in state court alleging that some of the owners of property were violating some of the restrictive covenants by allowing unaccompanied guests to visit the property and by subdividing the property. Two more petitions were filed. The three petitions were consolidated. In <u>Cathcart v. Magruder</u>, 960 So.2d 1032 (La. App. 1st Cir. 2007) ("<u>Magruder</u>"), the Court of Appeal issued a decision. No writs were taken to the Supreme Court, so the decision is final. It held:

    a.    The first servitude of passage did not restrict its use to owners of the dominant estates.

    b.    The boat launch servitude did not limit its use to owners or escorted guests.

    c.    Members of an LLC as well as other unrecorded owners of property in MaKinley

                Cove were entitled to use both of the servitudes.

       d.       The Cathcarts were permanently enjoined from erecting a gate on the servitude on their property (their residence was 194 feet from the first servitude of passage).

18. The Cathcarts filed another action in state court against David Morace and others [Cathcart v. Morace, No. 94,605 (22nd Judicial District Court for the Parish of Washington, State of Louisiana - November 27, 2007) ("Morace")]. A judgment was issued by the district court on November 27, 2007. An appeal was taken. Briefs were filed, but Morace has not been set for oral argument. The November 27, 2007 judgment states that "the entire 411.93 acres designated as MaKinley Cove, and the individual parcels therein, are to receive the benefits and are burdened with each and every of the" restrictive covenants. Rec. doc. 28 (Exhibit E).

## CATHCARTS' COMPLAINT IN FEDERAL COURT

The Cathcarts allege that: (1) they have no legal right to use the portion of Lake MaKinley on the Cox property; (2) Circle T breached the October 10, 2000 sale contract by misrepresenting their rights to the lake; (3) Circle T breached the sale contract by selling parcels which were not burdened by the restrictive covenants; (4) Circle T represented that the gate across the gravel road would be maintained to enforce the restrictive covenants; and (5) when Circle T removed the gate, the only means of enforcing the restrictive covenants was denied to them. The Cathcarts allege causes of action based on fraud in the inducement (fraudulent misrepresentation), detrimental reliance, breach of contract, and duty of good faith performance and fair dealing. Rec. doc. 1.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The defendants contend that: (1) all agreements relating to immovable property must be in writing; (2) the plaintiffs cannot assert a cause of action against the defendants based on disputes over the meaning of the restrictive covenants; (3) the plaintiffs received the right to use the portion

of Lake MaKinley acquired by Circle T, but the right of use did not extend to the portion not owned by it; (4) parol evidence cannot be used to vary the terms of the contract; (5) neither Davis nor Circle T made any representations to the plaintiffs; (6) assuming that Joey Knight, the real estate agent, misrepresented the right of the Cathcarts to use the entire lake or that the gate would be maintained, the defendants are not bound by his representations because he was a real estate broker acting for all parties to the act of sale; (7) assuming that Clayton Knight, the closing attorney, made any misrepresentations, they are without effect as he was the attorney for the Cathcarts; and (8) there is no basis in the restrictive covenants to conclude that MaKinley Cove would be maintained as a "gated community." Rec. doc. 23.

In their opposition, the Cathcarts urge that: (1) the defendants, through the real estate agent and closing attorney, made representations which caused the Cathcarts to purchase the property; (2) when the defendants sold other parcels without subjecting them to the restrictive covenants they vitiated the restrictive covenants; (3) the defendants, through the real estate agent, made false representations that the property would remain gated; and (4) the defendants, through the real estate agent, made false representations that the Cathcarts would be able to use the entirety of Lake MaKinley. The Cathcarts urge that material issues of fact preclude summary judgment.

## APPLICABLE STANDARD

Fed. R. Civ. P. 56 provides in pertinent part that summary judgment will be granted when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Lujan v. National Wildlife Federation, 497 U.S. 871, 889, 110 S.Ct.

6

3177, 3189 (1990). To that end, the court must "view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. <u>Wyatt v. Hunt Plywood</u>, 297 F.3d 405, 409 (5th Cir. 2002). Where the record taken as whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); <u>Washington v. Allstate Ins. Co.</u>, 901 F.2d 1281 (5th Cir. 1990).

Furthermore, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case. <u>Celotex</u>, 106 S.Ct. at 2553; see <u>Lujan</u>, 110 S. Ct. at 3187. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. <u>Celotex</u>, 106 S.Ct. at 2553-54. A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Kee v. City of Rowlett Texas</u>, 247 F.3d 206, 210 (5th Cir. 2001).

This burden is not satisfied with "some metaphysical doubt as to the material facts," <u>Matsushita</u>, 106 S.Ct. at 1356, by "conclusory allegations," <u>Lujan</u>, 110 S. Ct. at 3180, by "unsubstantiated assertions," <u>Hopper v. Frank</u>, 16 F.3d 92 (5th Cir.1994), or by only a "scintilla" of evidence, <u>Davis v. Chevron U.S.A., Inc.</u>, 14 F.3d 1082 (5th Cir.1994). The court resolves factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. The court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. See <u>Lujan</u>, 110 S. Ct. at 3188. Summary judgment is appropriate in any case "where critical

evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir.1993). If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted. See Evans v. City of Bishop, 238 F.3d 586, 588-89 (5th Cir. 2000).

## ANALYSIS

1.   Breach of contract.

   In their cause of action for breach of contract, the plaintiffs allege that:

   > Defendants breached their agreement regarding the sale of Property as set forth hereinabove by failing to provide what was represented therein and for failing to adhere to its terms and conditions.

Rec. doc. 1 at 5. The defendants urge that there is no basis to conclude that the defendants breached the October 10, 2000 contract of sale. They contend that there is no cause of action against them based on a claim that other land owners are not complying with the restrictive covenants or that the restrictive covenants have been interpreted in a manner which is inconsistent with the Cathcarts' understanding of them.

   The plaintiffs respond that: (1) although the restrictive covenant is silent about a locked gate, the limitations on the use of the property found in the restrictive covenants could only be enforced through a locked gate; (2) the fact that the gate was kept locked for over a year after their purchase demonstrates that the restrictive covenants were interpreted to require a locked gate; (3) the real estate agent, Joey Knight, represented that there would be locked gate; (4) Davis breached the restrictive covenant by removing the lock from the gate; and (5) Circle T breached the restrictive covenants when it sold property to Ellis and others with a statement the restrictive covenants did not apply to the property purchased by them.

Part 5 of the restrictive covenant provides:

> Parcels adjacent to the lake are designated for private use (owners and family). No guest is allowed unless accompanied by an owner, whether on the lake, hunting or on the premises. Any individual not accompanied is a trespasser subject to penalties.

Rec. doc. 23 (exhibit 2). The plaintiffs argue that the only practical way to effectuate this provision was to maintain a locked gate at the entrance to MaKinley Cove. But the issue is not to determine the most practical way to enforce the restrictive covenant and then insert such a clause into the restrictive covenant, but rather whether the restrictive covenant provides for the permanent maintenance of a locked gate at Highway 25. It did not.

In <u>Magruder</u>, the court determined that the Cathcarts were permanently enjoined from erecting a gate on the servitude passage on their property. The First Circuit held:

> The Cathcarts' residence is situated 194 feet from the servitude of passage on their property. They urge that the existence of the original gate limiting access to MaKinley Cove was a factor in their decision to buy their property, and that their concerns regarding trespassers and the speed of passing vehicles are legitimate. However, as pointed out by the opposing parties, more tracts of property have been sold in MaKinley Cove since the Cathcarts' acquisition of their property, necessarily resulting in more traffic on the servitude. The Cathcarts contend that the trial court erred in permanently enjoining their erection of a gate on the servitude on their property and in refusing to issue a mandatory injunction imposing a speed limit on the servitude.
>
> The owner of the servient estate may do nothing tending to diminish or make more inconvenient the use of the servitude. Conversely, the dominant estate must exercise its rights in a way least inconvenient for the servient estate. If the dominant estate is divided, no additional burden may be imposed on the servient estate.
>
> The standard of review for the issuance of a permanent injunction is the manifest error standard. The interrelated issues of whether the placement of the proposed gate would make the use of the servitude more inconvenient and whether the division in ownership imposed an additional burden on the Cathcarts were fact issues. As trier of fact, the trial court resolved these issues in favor of the defendants. As there are two permissible views of the evidence, requiring an assessment of the credibility of the witnesses and the weighing of the evidence, the trial court's determination is entitled to deference and cannot be considered manifestly erroneous. The same

9

>considerations apply to the trial court's determination that imposition of a mandatory speed limit on the servitude was inappropriate and unwarranted under the facts presented at trial.

Id. at 1041 (citations omitted). If the restrictive covenant mandated a locked gate at Highway 25, there was no need to discuss whether the Cathcarts had the right to erect a gate on the part of the gravel road which traversed their property.[2] The decision is persuasive on the issue of whether the restrictive covenants required a locked gate on the gravel road at Highway 25.

The fact that the gate was kept locked from the time the covenants were established on August 11, 2000 until August 2001, does not alter their plain language.

While the alleged representations of Joey Knight, the real estate agent, may be significant to the cause of action based on fraudulent misrepresentation, they do not alter the terms of the restrictive covenants.

Because the restrictive covenants did not mandate the maintenance of a locked gate, Davis did not breach the contract of sale when he removed the lock.

At this time it is impossible to determine whether Circle T breached the contract of sale when it sold property to Ellis and others with the provision that the restrictive covenants did not apply to the property purchased by them. The issue of whether the restrictive covenants apply to the property sold to Ellis and others is on appeal in state court. If the Cathcarts prevail on that issue, then the restrictive covenants will apply to the entire 411.93 acres, including the land sold to Ellis and the properties on the river. If that is the case, by affirmatively stating in the acts of sale that the restrictive covenants did not apply to such properties, Circle T may well have breached the contract

---

[2] The court is not suggesting that Macgruder is *res judicata*. Pursuant to La. Rev. Stat. Ann. § 13:4231, one of the elements of *res judicata* is a valid and final judgment between the same parties. Circle T and Davis were not parties in the Macgruder case.

of sale to the Cathcarts which was made subject to the covenants.

Because of the pending litigation in state court regarding the scope of the restrictive covenants, the defendants' request for summary judgment on the plaintiffs' cause of action for breach of contract must be denied in part. The case will be stayed and administratively closed pending the resolution of the Morace case.

2.      Fraudulent misrepresentation.

The Cathcarts allege in their claim for fraudulent misrepresentation that:

> To the extent that the Restrictions do not extend to all of MaKinley Cove as represented, defendants induced the Cathcarts to enter into the purchase agreement based upon representations it knew to be false when made. In particular, the Cathcarts justifiably relied on representations by defendants that all of the property in MaKinley Cove was subject to the Restrictive Covenants, which was to be enforced with a locked entrance gate that would act, in part, to restrict the flow of traffic on that right of way protecting the property and personal safety of the Cathcarts, and would maintain and enhance the value of their investment.

Rec. doc. 1. The plaintiffs also contend that the real estate agent misrepresented their right to use the entirety of Lake MaKinley.

In Griffin v. BSFI Western E&P, Inc., 812 So.2d 726 (La. App. 1st Cir. 2002), the plaintiffs brought suit for fraudulent misrepresentations and the recovery of damages concerning the purported assignment of an oil and gas field. The court noted that fraudulent misrepresentation may give rise to a claim in tort under La. C.C. Article 2315 or it can be pled as the basis for an action in contract under La. C.C. 1953. A delictual action is subject to a liberative prescription of one year. La. C.C. 3492. The court found that:

> Based upon the true characterization of the allegations of fraud in the state pleadings, the action alleged was the intentional tort of fraudulent misrepresentation. The factual allegations were directed toward a recovery of damages, and not asserted as a basis for contract recision or another identifiable cause of action with a longer prescriptive period.

812 So.2d at 734.  The Cathcarts do not seek recision of the sale, but rather seek damages.  Their claim against the defendants is delictual.  Davis removed the lock from the gate in August 2001. The claim for fraudulent misrepresentation based on any statements made by the defendants or their alleged agents concerning the gate, asserted in this case on June 17, 2007, is prescribed.

Aaron Cathcart testified that he spoke to Reverend Cox a year and a half before his deposition and learned that there was no servitude of use over any part of the lake on the Cox Property.  Rec. doc. 23 (Exhibit 3 at 116).  Although the exact date of the conversation does not appear in the deposition, eighteen months prior to the deposition would have been more than a year before the filing of the complaint. The claim for fraudulent misrepresentation based on any statements made by the defendants or their alleged agents concerning use of the lake is prescribed.

3. <u>Detrimental reliance and breach of good faith and fair dealing</u>.

The defendants did not seek summary judgment on these claims.

IT IS ORDERED as follows:

1. The defendants' motion for summary judgment (Rec. doc. 23) is GRANTED in PART and DENIED in PART.

2. The motion is GRANTED in PART and DENIED in PART as to the claim for breach of contract as provided herein.

3. The motion is GRANTED as to the claim for fraudulent misrepresentation.

4. The trial set for October 1, 2008 is CONTINUED to be RESET.

5. The case will be stayed and administratively closed until there is a final judgment in Morace.

New Orleans, Louisiana, this 19th day of September, 2008.

                                                       **SALLY SHUSHAN**
                                          **United States Magistrate Judge**