# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AARON R. CATHCART, et al** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-3228-SS** |
| **CIRCLE T, LTD., et al** | |

## ORDER

DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT (Rec. doc. 46)

**GRANTED IN PART AND DENIED IN PART**

On January 21, 2010, the defendants, Circle T, Ltd. ("Circle T") and James G. Davis ("Davis"), filed a second motion for summary judgment on the claims of the plaintiffs, Aaron R. Cathcart and Betty Leboeuf Cathcart (sometimes referred to as "Cathcarts").

## PROCEDURAL BACKGROUND

On June 7, 2007, the plaintiffs filed a complaint against Circle T and Davis. Rec. doc. 1. Jurisdiction is present pursuant to 28 U.S.C. § 1332. The parties consented to proceed before a magistrate judge. Rec. docs. 13-17. On September 19, 2008, the defendants' first motion for summary judgment was granted in part and denied in part and the case was administratively closed. Rec. doc. 38. On September 24, 2009, it was reopened. Rec. doc. 43. On January 21, 2010, the defendants filed a second motion for summary judgment. Rec. doc. 46. The pretrial conference is set for April 28, 2010, and the trial is set for May 18, 2010. Rec. doc. 45.

## UNDISPUTED FACTS

1. Prior to 1999, there was a sand and gravel operation on rural land in Washington Parish between the Bouge Chitto River and Louisiana Highway 25. A gravel road from the highway

provided access to this enterprise. A locked gate was maintained across the gravel road at the highway to prevent trespassers from having easy access to the property.

2. During the operation of the enterprise, pits were dug and flooded. A lake was formed on the property, which covers approximately 100 acres.

3. On May 28, 1999, Green Land Limited Partnership sold land to Circle T by which Circle T acquired 411.93 acres, including part of the lake. The tract was bounded by: the Bouge Chitto River on the west; a line which lay roughly parallel to and just north of the gravel road; Highway 25 on the east; and a very irregular line on the south.

4. At some point Rev. Jerry Wayne Cox and his wife, Brenda Cox, acquired 309.98 acres (the "Cox property") immediately to the south of Circle T's 411.93 acres. The Cox property included most of the land beneath the 100-acre lake.

5. At some point the 100-acre lake was named Lake MaKinley; and at least some of the Circle T property was referred to as MaKinley Cove.

6. On July 18, 2000, Circle T sold 20.648 acres of its 411.93 acres to James and Cathy Magee (the "Magees" or the "Magee property").

7. The Magee act of sale established a nonexclusive servitude and right of ingress and egress for passage in favor of the Magee property and subsequent parcels conveyed (sometimes referred to as the "first servitude of passage" or the "first servitude"). This first servitude of passage is served by the gravel road, which parallels most of the northern boundary of the 411.93 acres.

8. On August 11, 2000, Circle T and the Magees established "Restrictive Covenants for MaKinley Cove and adjacent parcels . . ." Rec. doc. 23 (Exhibit 2). The restrictions included the following:

a.      All lots were designated as recreational, residential and noncommercial.

b.      No lot shall be divided into smaller parcels of less than five acres.

c.      Parcels adjacent to the lake are designated for private use (owners and family). No guest is allowed unless accompanied by an owner, whether on the lake, hunting or on the premises. Any individual not accompanied is a trespasser subject to penalties.

d.      There will be no clear cutting of timber on any parcel.

e.      Any mobile home placed on the property shall be tied down and skirted.

9. On August 22, 2000, the Cathcarts signed an agreement to purchase 5.3 acres. Joey Knight was identified as the listing agent and the seller was not identified. The property was described as Headright 40, Township 1, Range 10 in the town of Clifton, Parish of Washington.

10. On October 10, 2000, a second servitude of passage was created, which extended from the gravel road westward to a boat launch on the Bouge Chitto River (the "second servitude").

11. On October 10, 2000 (the same day as the creation of the second servitude), Circle T sold 5.32 acres to the Cathcarts. The act of sale provided that it was subject to: (a) the first servitude of passage; (b) the second servitude of passage; and (c) the restrictive covenants, all of which were recorded in the Washington Parish public records. The Cathcarts' property is the shape of a right triangle. One side is on a portion of the north boundary of the 411.93 acre tract. A second side, which formed the right angle, extends in a southerly direction on the bank of one of the fingers of Lake MaKinley and into the lake. The third side ran in a southwesterly direction.

12. Clayton Knight was the closing attorney when the Cathcarts purchased their property and they acquired a title policy from him.

13. The gate across the gravel road at Highway 25 remained locked. The property owners in MaKinley Cove had keys to the gate.

14.  In August 2001, Circle T removed the lock from the gate at Highway 25, and it has remained unlocked since that time.

15.  On December 21, 2001, Circle T sold 183.07 acres of the 411.93 acres to Margie Ellis. The sale was subject to the first and second servitudes.  The act of sale specified that:

> The restrictive covenants of record at COB 510 Page 429 of the official records of Washington Parish, Louisiana apply only to property and property owners on MaKinley Cove and not to the above described property.

Rec. doc. 28 (Exhibit D).

16.  Circle T sold lots fronting the Bouge Chitto River and the acts of sale stated that the restrictive covenants did not apply to them.

17.  On August 7, 2003, the Cathcarts filed a petition in state court alleging that some of the owners of property were violating some of the restrictive covenants by allowing unaccompanied guests to visit the property and by subdividing the property.  Two more petitions were filed and the three petitions were consolidated.  In Cathcart v. Magruder, 960 So.2d 1032 (La. App. 1st Cir. 2007) ("Magruder"), the Court of Appeal issued a decision.  No writs were taken to the Supreme Court, and therefore the decision is final.  It held:

a.    The first servitude of passage did not restrict its use to owners of the dominant estates.

b.    The boat launch servitude did not limit its use to owners or escorted guests.

c.    Members of an LLC as well as other unrecorded owners of property in MaKinley Cove were entitled to use both of the servitudes.

d.    The Cathcarts were permanently enjoined from erecting a gate on the servitude on their property (their residence was 194 feet from the first servitude of passage).

18.  The Cathcarts filed another action in state court against David Morace and others.  On May 13, 2009, the Louisiana First Circuit Court of Appeal reversed a summary judgment in the

Cathcarts' favor on the issue of whether of the restrictive covenants applied to all 411.93 acres. The Court of Appeal found that the restrictive covenant was ambiguous, and the intent of the parties as to whether it applied to all 411.93 acres or to just the portions adjacent to the lake is a question of fact. It remanded the case to the trial court. Cathcart v. Morace, 2009 WL 1329933 (La. App. 1st Cir.).

19. The Cathcarts dismissed Morace with prejudice.

20. The restrictive covenants were intended to apply only to the parcels of property located and to be located in and adjacent to MacKinley Cove and were not intended to apply to the remainder of the 411 acres.

## CATHCARTS' COMPLAINT IN FEDERAL COURT

The Cathcarts allege that: (1) they have no legal right to use the portion of Lake MaKinley on the Cox property; (2) Circle T breached the October 10, 2000 sale contract by misrepresenting their rights to the lake; (3) Circle T breached the sale contract by selling parcels which were not burdened by the restrictive covenants; (4) Circle T represented that the gate across the gravel road would be maintained to enforce the restrictive covenants; and (5) when Circle T removed the gate, the only means of enforcing the restrictive covenants was denied to them. The Cathcarts alleged causes of action based on fraud in the inducement (fraudulent misrepresentation), detrimental reliance, breach of contract, and breach of duty of good faith performance. Rec. doc. 1.

## FIRST MOTION FOR SUMMARY JUDGMENT

On the first motion for summary judgment it was determined that: (a) Davis did not breach the contract of sale when he removed the lock (Rec. doc. 38 at 8-10); and (b) the claim for fraudulent misrepresentation was prescribed (Rec. doc. 38 at 11-12). On the remaining breach of contract

claim, the September 19, 2008 order stated:

> At this time it is impossible to determine whether Circle T breached the contract of sale when it sold property to Ellis and others with the provision that the restrictive covenants did not apply to the property purchased by them. The issue of whether the restrictive covenants apply to the property sold to Ellis and others is on appeal in state court. If the Cathcarts prevail on that issue, then the restrictive covenants will apply to the entire 411.93 acres, including the land sold to Ellis and the properties on the river. If that is the case, by affirmatively stating in the acts of sale that the restrictive covenants did not apply to such properties, Circle T may well have breached the contract of sale to the Cathcarts which was made subject to the covenants.

> Because of the pending litigation in state court regarding the scope of the restrictive covenants, the defendants' request for summary judgment on the plaintiffs' cause of action for breach of contract must be denied in part. The case will be stayed and administratively closed pending the resolution of the Morace case.

Rec. doc. 38 at 10-11. The defendants did not seek summary judgment on the plaintiffs' claims for detrimental reliance and breach of duty of good faith performance on the first motion.

## SECOND MOTION FOR SUMMARY JUDGMENT

The defendants seek summary judgment on all of the remaining claims of the plaintiffs. They present affidavits from Clayton Knight, James Magee and James Davis. Rec. doc. 46. The plaintiffs oppose the motion. Rec. doc. 48.

## APPLICABLE STANDARD

Fed. R. Civ. P. 56 provides in pertinent part that summary judgment will be granted when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Lujan v. National Wildlife Federation, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189 (1990). To that end, the court must view the facts and the inferences to be drawn

therefrom in the light most favorable to the nonmoving party. <u>Wyatt v. Hunt Plywood</u>, 297 F.3d 405, 409 (5th Cir. 2002). Where the record taken as whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); <u>Washington v. Allstate Ins. Co.</u>, 901 F.2d 1281 (5th Cir. 1990).

Furthermore, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case. <u>Celotex</u>, 106 S.Ct. at 2553; <u>see</u> <u>Lujan</u>, 110 S. Ct. at 3187. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. <u>Celotex</u>, 106 S.Ct. at 2553-54. A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Kee v. City of Rowlett Texas</u>, 247 F.3d 206, 210 (5th Cir. 2001).

This burden is not satisfied with "some metaphysical doubt as to the material facts," <u>Matsushita</u>, 106 S.Ct. at 1356, by "conclusory allegations," <u>Lujan</u>, 110 S. Ct. at 3180, by "unsubstantiated assertions," <u>Hopper v. Frank</u>, 16 F.3d 92 (5th Cir.1994), or by only a "scintilla" of evidence, <u>Davis v. Chevron U.S.A., Inc.</u>, 14 F.3d 1082 (5th Cir.1994). The court resolves factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. The court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. <u>See</u> <u>Lujan</u>, 110 S. Ct. at 3188. Summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of

the nonmovant." <u>Armstrong v. City of Dallas</u>, 997 F.2d 62 (5th Cir.1993). If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted. <u>See</u> <u>Evans v. City of Bishop</u>, 238 F.3d 586, 588-89 (5th Cir. 2000).

ANALYSIS

A.     <u>Breach of contract</u>.

The plaintiffs allege that Circle T breached the restrictive covenants when it sold property to Margie Ellis and others with a statement that the restrictive covenants did not apply to the property purchased by them. If the restrictive covenants do not apply to the entire 411 acres, then the plaintiffs do not have a claim for breach of contract.

The issue of whether the restrictive covenants applied to the entire 411 acres was the issue in <u>Morace</u>. The trial court found that the entire 411 acres were burdened with the restrictive covenants. Rec. doc. 28 (Exhibit E). The court of appeal reversed. It held that the restrictive covenants were ambiguous. 2009 WL 1329933 at *5. For the reasons stated by the court of appeal, the undersigned finds that the restrictive covenants are ambiguous.

The remaining question is whether there is a material issue of fact as to the intent of the parties regarding the applicability of the restrictive covenants to the entire 411 acres. The defendants submitted the affidavits of three persons: (1) James Magee, one of the parties to the act establishing the restrictive covenants (Rec. doc. 23 (Exhibit 2)); (2) Davis, who signed the act on behalf of Circle T; and (3) Clayton Knight, who drafted the restrictive covenants and was the notary for the act. Rec. doc. 46 (Exhibits 1-3). The affidavit from James Magee states that the "restrictive covenants were intended to apply only to the parcels of property located and to be located in and adjacent to MacKinley Cove lake and were not intended to apply to the remainder of the 411 acres."

8

Rec. doc. 46 (Exhibit). The affidavits by Davis and Knight contain similar statements. Rec. doc. 46 (Exhibits). The only party to the act who did not provide an affidavit is Cathy Magee. There is no evidence that she disputes her husband's affidavit.

The Cathcarts did not submit any evidence to contradict the statements regarding the intent of the parties to the act. A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Kee v. City of Rowlett Texas</u>, 247 F.3d 206, 210 (5th Cir. 2001). On the issue of the intent of the parties to the restrictive covenants, a reasonable jury could not return a verdict for the plaintiffs.[1] The motion for summary judgment will be granted as to the remaining breach of contract claim. This also resolves the plaintiffs' claim that the defendants breached their duty of good faith under La. Civ. Code Ann. art. 1983 (1984). Rec. doc. 1 at 6 and Rec. doc. 48 at 12. Inasmuch as the plaintiffs do not have a claim for breach of contract, they cannot contend that the defendants failed to act in good faith in the performance of the contract.

B.  <u>Detrimental reliance</u>.

The plaintiffs contend that the defendants through their agent, Joey Knight, made the following promises: (a) they would have use of entire lake; (b) the community would be gated; and (c) the entire community would be subject to the restrictive covenants. They contend that they relied on these promises when they purchased land in MaKinley Cove.

The defendants argue that: (a) a promise is an essential element of a claim under La. Civ. Code Ann. art. 1967 (1984); (b) plaintiffs fail to state a claim for detrimental reliance because they do not contend that the defendants made a promise to the plaintiffs; and (c) misrepresentations are

---

[1] This matter is set for trial without a jury. Rec. doc. 45.

insufficient to support a claim for detrimental reliance.

The Louisiana Civil Code provides that,

> A party may be obligated by a <u>promise</u> when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying.

La. Civ. Code Ann. art. 1967 (1984) (emphasis added). The first element of a claim of detrimental reliance is that the defendant (promisor) made a promise to the plaintiff (promisee). <u>Wooley v. Lucksinger</u>, 961 So.2d 1228, 1238 (La.App. 1st Cir. 2007).[2]

In urging that the plaintiffs fail to state a claim for detrimental reliance, the defendants seek relief under Fed. R. Civ. P. 12(b)(6). "[A] claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief and the court accepts as true the well-pled factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." <u>U.S. ex rel. Willard v. Humana Health Plan of Texas Inc</u>., 336 F.3d 375, 379 (5th Cir. 2003). Pursuant to this standard, the Cathcarts have stated a claim of detrimental reliance.

The defendants contend that the claim of detrimental reliance is prescribed as it is subject to the same prescriptive period as the claim for fraudulent misrepresentation. The defendants argue that: (a) although the claim of detrimental reliance arose in the context of a contractual relationship, it does not follow that the cause of action is contractual; (b) the court is not required to accept the plaintiffs' characterization of the cause of action; and (c) the plaintiffs' allegations in support of their claim for detrimental reliance are the same allegations made in support of the prescribed claim for fraudulent misrepresentation. The defendants urge that the liberative prescription for a delictual

---

[2] The other four elements are: (1) the defendant knew or should have known that the promise would induce the plaintiff to rely on it to his detriment; (2) the plaintiff relied on the promise to his detriment; (3) the plaintiff was reasonable in relying on the promise; and (4) the quantum of the damages sustained if specific performance is not selected as a remedy. 961 So.2d at 1238.

action is applicable to the plaintiffs' claim of detrimental reliance. La. Civ. Code Ann. art. 1967 (1992). They do not cite any case holding that a claim of detrimental reliance is subject to the prescription of one year.

Article 1967 is found in Book III of the Louisiana Civil Code which is concerned with the different modes of acquiring the ownership of things. Article 1967 is part of Title IV on conventional obligations or contracts. Within that Title, Article 1967 is found in Chapter 5 regarding cause. The introductory note from the reporter of the Obligations Committee of the Louisiana State Law Institute explains that the revised articles retain the notion of cause but there is a new definition in Article 1967. "[I]t defines cause in terms of 'reason' rather than 'motive;' second, it introduces detrimental reliance as an additional ground for enforceability." West's Louisiana Statutes Annotated Civil Code, Vol. 7(2008), p. 185. Detrimental reliance is an additional ground for enforceability of an obligation. "[A] promise becomes an enforceable <u>obligation</u> when it is made in a manner that induces the other party to rely on it to his detriment." La. Civ. Code Ann. art. 1967 - Revision Comments (1984) (emphasis added). "[T]he court may grant damages, rather than specific performance, to the disappointed promisee. . . . The court . . . need not necessarily grant the promisee both of the elements of damages specified in revised C.C. Art. 1995. . . ." <u>Id</u>. The measure of damages for conventional obligations is provided by La. Civ. Code Ann. art. 1995 (1984).

If the plaintiffs can establish the elements of detrimental reliance, they have established a conventional obligation. It is subject to the liberative prescription for a personal action which is ten years. La. Civ. Code Ann. art. 3499 (1984).

Pursuant to La. Civ. Code Ann. art. 1759 (1984), "[g]ood faith shall govern the conduct of

the obligor and the obligee in whatever pertains to the obligation." Article 1759 extends to general obligations the principle that contracts must be performed in good faith. La. Civ. Code Ann. arts. 1759 and 1983 - Revision Comments (1984). The plaintiffs contend that defendants are obligated by the promises made to them. The plaintiffs' contention that the defendants failed to act in good faith is dependent on their claim for detrimental reliance. If the plaintiffs cannot establish their claim for detrimental reliance, they do not possess an independent cause of action for the alleged failure of the defendants to act in good faith.

<u>CONCLUSION</u>

The defendants' second motion for summary judgment is granted as to plaintiffs' claim that the defendants breached the contract of sale when they sold property to Ellis and others with the provision that the restrictive covenants did not apply to the property purchased by them. The motion is denied as to plaintiffs' claim of detrimental reliance.

IT IS ORDERED that defendants' second motion for summary judgment is GRANTED in PART and DENIED in PART as provided herein.

New Orleans, Louisiana, this 17th day of March, 2010.

**SALLY SHUSHAN**
**United States Magistrate Judge**